A. C. JORDAN, FOR AND ON BEHALF OF HIMSELF AND OTHER RESIDENTS AND TAXPAYERS OF THE HOPE VALLEY SCHOOL DISTRICT OF DURHAM COUNTY v. THE BOARD OF COMMISSIONERS FOR DURHAM COUNTY, GEORGE F. KIRKLAND, FRANK H. KENAN, DEWEY S. SCARBORO, S. LeROY PROCTOR AND EDWIN B. CLEMENTS AND THE DURHAM COUNTY BOARD OF ELECTIONS, JOHN E. MARKHAM, O. C. WELLS AND J. D. BOBBITT.

(Filed 11 January, 1957.)

**Schools § 3a—**

Where a proper petition, signed by a majority of the qualified voters of an area less than a school district, for the annexation of the area to an adjoining city administrative unit, is approved by such city unit, the commissioners of the county have the ministerial duty, enforceable by *mandamus*, to call an election upon the question, even though the county board of education does not approve the petition, since the approval of the county board is necessary only in the absence of such petition. G.S. 115-116(3), G.S. 115-120, G.S. 115-121, G.S. 115-118. Continuance of a temporary order restraining the holding of such election is error.

JOHNSON, J., not sitting.

BOBBITT, J., dissenting.

RODMAN, J., dissenting.

APPEAL by defendants from *Mallard, J.,* May Term 1956 of DURHAM.

This is an action instituted in the Superior Court of Durham County by the plaintiff, A. C. Jordan, for and on behalf of himself and other (unnamed) residents and taxpayers of the Hope Valley School District of Durham County, against the defendants.

In September 1955, the Durham City School Board received a petition requesting that, pursuant to G.S. 115, Subchapter V, Article 14, an election be called to ascertain the will of the voters in the area designated by the petition regarding the enlargement of the Durham City School Administrative Unit. After due consideration, the Board, on 12 September 1955, approved the petition by endorsement of its chairman and secretary and recorded it in its minutes. The petition fully complied with G.S. 115-116(3); 115-118; 115-119 in that it contained the following:

(1) A statement of the purpose of calling the proposed election— namely, to ascertain the will of the voters in the area as to whether the affected area should be consolidated with and annexed to the Durham City School Administrative Unit and whether there should be levied a special tax of the same rate as that in the Durham City School Administrative Unit.

(2) A description of the area, by metes and bounds, in which the proposed election was requested.

(3) That the maximum rate of tax proposed to be levied was 40 cents per 100 dollar valuation.

(4) That if a majority of those who voted thereon in such new territory voted in favor of a "local tax of the same rate" the said territory should become part of the Durham City School Administrative Unit, and that the term "local tax of the same rate" included in addition to the 40 cents current expense levy any tax levy to meet the interest and sinking funds of any school bonds heretofore issued by the Durham City School Administrative Unit.

(5) That the area proposed to be annexed to the Durham City School Administrative Unit is adjacent to said unit and could be included in a common boundary with said unit.

(6) That the petition was duly signed by a majority of the qualified voters who had resided for the preceding twelve months in the affected area.

The petition, as endorsed and approved by the Durham City School Board, was presented to the Durham County Board of Education on 3 October 1955, which, after due consideration of it, refused to endorse and approve same.

The Board of Commissioners of Durham County received the petition on 17 October 1955, and after full consideration thereof, adopted a resolution on 19 April 1956 calling for a special school election, as requested in the petition, to be held on 29 May 1956, in the affected area, pursuant to G.S. 115-120 and 115-121.

The plaintiff obtained a temporary restraining order on 24 April 1956 to the effect that the "defendants herein be and they are hereby restrained, enjoined and forbidden until further orders of this court, to further proceed with the preparation for or the holding of said election and that the said defendants are hereby forbidden to do anything toward the preparation for and holding of said election until further ordered by this court."

Upon notice to the defendants to show cause, if any, why the temporary restraining order should not be continued until the final hearing of this action, the court at the hearing on 10 May 1956 continued the restraining order until the final hearing. The defendants appeal, assigning error.

*Reade, Fuller, Newsom & Graham for defendant appellants.*
*No counsel for plaintiff appellee.*

DENNY, J.   No question has been raised as to the form or substance of the petition, the endorsement of it by the Durham City School Board, or the validity of the signatures or the fact that such signatures are

those of a majority of the qualified voters who resided in the affected area for the required length of time. The sole issue in this case is whether the Board of Commissioners of Durham County had authority to call an election in the affected area in spite of the fact that the petition had not been endorsed by the Durham County Board of Education.

The pertinent parts of the relevant statutes read as follows:

"To Enlarge City Administrative Units and Districts. Elections may be called in any district or districts, or other school areas, of a county administrative unit to ascertain the will of the voters in such areas as to whether there shall be levied a special tax of the same rate as that voted in an adjoining city administrative unit or district with which unit or district such territory is to be consolidated." G.S. 115-116(3).

"The board of education to whom the petition requesting an election is addressed shall receive the petition and give it due consideration. If, in the discretion of the board of education, the petition for an election shall be approved, it shall be endorsed by the chairman and the secretary of the board and a record of the endorsement shall be made in the minutes of the board. Petitions for an election to enlarge a city administrative unit shall be subject to the approval and endorsement of both county and city board of education which are therein affected: *Provided, that when such petition is endorsed by the city board of education and signed by a majority of the voters in the affected area, the election shall be called.*" G.S. 115-120. (Emphasis added.)

"Petitions requesting special school elections and bearing the approval of the board of education of the unit shall be presented to the board of county commissioners, and it shall be the duty of said board of county commissioners to call an election and fix the date for the same." G.S. 115-121.

G.S. 115-118 sets out various ways by which such petitions may be presented to the county board of commissioners, to wit: "County and city boards of education may petition the board of county commissioners for an election in their respective administrative units or for any school area or areas therein.

"In county administrative units, for any of the purposes enumerated in G.S. 115-116, the school committee of a district or a majority of the committees in an area including a number of districts, or a majority of the qualified voters who have resided for the preceding twelve months in a school area less than a district, and which area is adjacent to a city unit or a district to which it is desired to be annexed and which can be included in a common boundary with said unit or district. . . ."

It would seem necessary to have the petition for an election approved by both the county and the city board of education in order to authorize the county board of commissioners to call the election as requested in

the petition, except where "a majority of the qualified voters who have resided for the preceding twelve months in a school area, less than a district, and which area is adjacent to a city unit or district to which it is desired to be annexed and which can be included in a common boundary with said unit or district," it is only necessary that the city board of education endorse the petition. G.S. 115-120.

In our opinion, upon the facts disclosed on this record, the duty imposed on the Board of Commissioners of Durham County, under G.S. 115-121, to call the election, is purely ministerial and might be enforced, in the event of a refusal to do so, by *mandamus*, and we so hold. *Board of Education v. Commissioners*, 189 N.C. 650, 127 S.E. 692.

The court below committed error in granting the temporary restraining order in this action, as well as in ordering the continuance of such order until the final hearing. The restraining order is hereby dissolved and the action will be dismissed.

Reversed.

JOHNSON, J., not sitting.

BOBBITT, J., dissenting: I agree with the Court's interpretation of the proviso in G.S. 115-120; but, as I see it, neither the findings of the court below nor the evidence sufficiently identifies the "affected area" as a "school area" or a "school area less than a district" within the meaning of these terms as used in G.S. 115-116(3) and G.S. 115-118.

The "affected area" is identified only as "the Lakewood-Rockwood" section of the Durham County Hope Valley School District. The record contains no plat or description disclosing the metes and bounds of the "affected area." The majority of the qualified voters in this "affected area" signed the petition; and the election would be confined to this "affected area." Whatever may be the precise meaning of "school area" or "school area less than a district," I am convinced that these terms contemplate more than *any* area adjoining the City of Durham, irrespective of size, shape or relationship to present school facilities. Hence, in my opinion, the showing made in the court below was not sufficient to bring this case within the proviso of G.S. 115-120; and for that reason I vote to affirm.

RODMAN, J., dissenting: My examination of our statutes dealing with public education convinces me that the opinion of the majority does not conform to legislative intent and is apt to create serious problems in our effort to provide an adequate system of public education for all our children—both urban and rural.

A petition asking for an election on the question of amputating "an area known as the Lakewood-Rockwood section of the Durham County Hope Valley School District" and skin grafting this area to Durham City Administrative Unit has been approved by the city unit, notwithstanding the objections and protests made by the Durham County Administrative Unit.

In view of the objections and protests, it is only fair to assume that the proposed amputation will create problems for the body from which the limb is to be severed. The scope and extent of those problems are not delineated in the record, but no vivid imagination is required to visualize some which are apt to arise.

But the fact that the proposed severance will create problems is no justification for denying it if authorized by law. The undeniable fact that serious administrative problems will be created merely emphasizes the need for careful examination of the law which is claimed as authority for the operation.

It is said that the petition asking for the election "fully complied with G.S. 115-116(3) ; 115-118; 115-119 in that it contained the following:" Then follows an enumeration of six particulars in which the petition is said to meet the requirements of the statutes. There is missing from the enumeration the basic fact on which the petition must rest, a designation of the area. Petitions may be filed for and elections held in "any district or districts, *or* other *school areas,*" G.S. 115-116(3). (Emphasis supplied.)

"In county administrative units, for any of the purposes enumerated in G.S. 115-116, the school committee of a district, or a majority of the committees in an area including a number of districts, or a majority of the qualified voters who have resided for the preceding twelve months in *a school area* less than a district . . ." may file a petition. G.S. 115-118. (Emphasis supplied.)

Thus it appears by express statutory language that elections can only be held in (1) an administrative unit, (2) a school district, (3) an area including several districts, or (4) a *school area* less than a district.

Unless the area in which it is proposed to hold the election can qualify under one of these four classifications, there is no authority for the proposed amputation, and the election should not be held.

It is readily apparent that the area cannot meet the descriptive test of any of the first three classes.

An administrative unit is either county or city. It is set up for convenience in administering State funds and policies. G.S. 115-4.

The term "district" as used in the State school law is "defined to mean any convenient territorial division or subdivision of a county, created for the purpose of maintaining within its boundaries one or more public schools. It may include one or more incorporated towns

or cities, or parts thereof, or one or more townships, or parts thereof, all of which territory is included in a common boundary." G.S. 115-7.

The Constitution vests the State Board of Education with authority to divide the State and counties into school districts, Art. IX, sections 3 and 9.

The only remaining unit in which an election can be held is "a school area." G.S. 115-116 & 118. What is a school area? The statutes do not expressly define the term, but I think when we look at the whole school law and look for the reasoning back of the legislation we should have no difficulty in determining what areas the Legislature had in mind.

In our effort to provide better school facilities, local school units had, during the 1920s, created school obligations beyond their ability to meet. After a protracted session, the 1933 Legislature made provision for a uniform, statewide school system. It provided funds to operate all the schools on a standard fixed by it. It abolished all school districts, special tax districts, and special charter districts for administrative and tax purposes. P.L. 1933, c. 562. Each county was declared a school administrative unit. Authority was granted the State School Commission to set up city administrative units, c. 562, P.L. 1933, G.S. 115-11(11). The State School Commission was required, upon recommendations of local boards of education, to divide each county into a convenient number of school districts, G.S. 115-11(3). By definition, a school district may comprise one or more townships. A district may have only one school in it, or it may have several schools in it. The size of the districts and the number of schools in each district vary in accord with local conditions. It is a fact of which judicial notice may be taken that many districts have more than one school and in many districts there are several schools. It is necessary to make provision for the operation of each of these schools and the assignment of pupils to a particular school. Appropriately the Legislature gave to county boards of education authority to set up attendance areas, G.S. 115-35. Was it not these attendance areas which the Legislature had in mind when it authorized an election in a "school area less than a district"? As noted, there is no statutory definition of "school area," but assuredly the word "school" when used to modify the word "area" should be given some significance. The phrase occurs too often to assume that it was accidental and without significance. See G.S. 115-116(1) (3) (5), 115-118, 115-76.

If "school area" merely means an area which a group of patrons may wish to take out of the school system set up for them and into another school system, it is the only instance in the school law where a few can effectively disrupt the administration of our public school system. Will the annexation proposed and approved by Durham City Schools neces-

sitate the abandonment of a High School in Hope Valley? It must maintain an average daily attendance of at least sixty if it is to keep its high school, G.S. 115-76. Teachers are allotted on the basis of average daily attendance. What effect will the change have on the allotment of teachers? What transportation problems will arise to plague the State School Commission as well as the Durham County Board of Education? These merely illustrate some of the problems certain to arise out of the Pandora Box which I think is now being opened.

I call attention to G.S. 115-77 which permits "real property" contiguous to a city administrative unit to be annexed to the city under these conditions: (1) the city board must approve; (2) the State Board of Education must give its approval; (3) the county board must approve; (4) there must be unanimous approval of the owners of the property and of the taxpayers of each family living on such property. Thus provision is made for annexation of an area less than a "school area." It will be noted that when an area less than a district or "school area" is transferred, all of the boards responsible for the administration of our public school system are required to give their consent; but if the law is as the majority interprets it, a part of Hope Valley can be detached without the approval of the State Board of Education or Durham County Board of Education, leaving what had been Hope Valley and its attendant problems in the lap of the Durham County Board of Education who has protested in vain.

"School area," as I read the law, is an area served by a particular school. When it is detached, the whole must be taken, not merely a part. An area defined by bounds, but not a "school area," wants to hold the election. There is in my opinion no authority for it.

It may be that I see dangers where none exist, but I am impressed with the problems growing out of an effort to provide education for more than a million children under the diverse conditions which exist in North Carolina. The State expends annually for that purpose in excess of $125,000,000. Local communities make substantial supplemental appropriations. If we are to effectively maintain and operate our schools for the benefit of all children—rural as well as urban—it must be a carefully planned operation. When a plan has been developed, it cannot be changed to gratify the whim of a few.

If the decision carries, as I think, hazard to our school system, and particularly the rural school, the Legislature, soon to convene, can correct the situation.